**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| GERALD PALMER,<br>Plaintiff, | : | |
| v. | : | CA 06-468 M |
| MICHAEL J. ASTRUE,[1]<br>COMMISSIONER,<br>SOCIAL SECURITY ADMINISTRATION,<br>Defendant. | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security, denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), under §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("the Act"). Plaintiff Gerald Palmer ("Plaintiff") has filed a motion for an order to reverse the Commissioner's decision. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. For the reasons stated herein, I find that the Commissioner's decision that Plaintiff is not disabled is

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Michael J. Astrue has been substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d)(1) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name ...."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

supported by substantial evidence in the record and is legally correct. Accordingly, I order that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document ("Doc.") #12) ("Motion to Affirm") be granted and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. #9) ("Motion to Reverse") be denied.

**Facts and Travel**

On July 14, 2004, Plaintiff filed applications for DIB and SSI, alleging disability since May 20, 2004, because of depression and post-traumatic stress disorder.[2] (R. at 15, 17, 71) His applications were denied initially, (R. at 32, 34-37), and upon reconsideration, (R. at 33, 38). Plaintiff requested an administrative hearing. (R. at 42) On April 18, 2006, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, and a vocational expert testified. (R. at 401-44) The ALJ issued a decision on June 30, 2006, finding that Plaintiff was not disabled. (R. at 15-25) The Appeals Council denied Plaintiff's request for review on August 25, 2006, (R. at 7-9), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 7). Plaintiff thereafter filed this action for judicial review.

**Issue**

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled is supported by substantial evidence in the record and is free of legal error.

**Standard**

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).

[2] At the April 18, 2006, hearing before the Administrative Law Judge ("ALJ"), Plaintiff's counsel amended the application for a closed period of disability from May 20, 2004, to June 30, 2005. (R. at 405-06)

Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[3] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Brown v. Apfel, 71 F.Supp.2d at 30 (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements, be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act.[4] See 42 U.S.C. § 423(a). An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain income requirements. See 42 U.S.C. § 1382(a).

---

[3] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)).

[4] The ALJ found that Plaintiff met the nondisability requirements for a period of disability and that he was insured for benefits through June 30, 2006. (R. at 24)

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A). A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1528 (2007) ("Your statements alone are not enough to establish that there is a physical or mental impairment.").

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a), 416.920(a) (2007); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy. See 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g). The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 5. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national

economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**ALJ's Decision**

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity during the period May 20, 2004, through May 31, 2005, (R. at 24);[5] that his depression and post-traumatic stress disorder were "severe" within the meaning of the Regulations, (id.); that, nonetheless, his claimed impairments, either singly or in combination, did not meet or medically equal a listed impairment, (id.); that his allegations regarding his impairments and their impact on his ability to work were not fully credible, (id.); that he retained the residual functional capacity ("RFC") to perform unskilled, routine and repetitive work at all exertional levels involving things, primarily, rather than people, and requiring no more than occasional interaction with coworkers and supervisors and no interaction with the public, (R. at 24-25); that he could not perform his past relevant work (R. at 25); that he was a "younger individual," as defined by the Regulations, and was able to communicate in English, (id.); that there existed in the regional and national economy a significant number of jobs which Plaintiff could perform, including such work as a machine operator, commercial cleaner, assembler, and packager, (id.); and that, therefore, Plaintiff was not disabled within the meaning of the Act, (id.).

**Claimed Error**

Plaintiff alleges that the ALJ failed to give appropriate

[5] The ALJ, however, also found that Plaintiff had engaged in substantial gainful activity from June 2005 though December 2005 as a mover at William Lawton and Son, Inc., and in February and March 2006 as a factory laborer. (R. at 24)

weight to the opinions of his treating psychiatrist and therapist and that for that reason the ALJ's residual functional capacity assessment is not based on substantial evidence. See Plaintiff's Memorandum in Support of his Motion to Reverse the Decision of the Commissioner ("Plaintiff's Mem.") at 7.

**Discussion**

The ALJ found that the evidence, considered as a whole, indicated that Plaintiff had the residual functional capacity to perform unskilled, routine, and repetitive work at all exertional levels involving things, primarily, rather than people, and requiring no more than occasional interaction with coworkers and supervisors and no interaction with the public. (R. at 18) Plaintiff challenges this assessment and faults the ALJ for giving "little weight," (R. at 22), to a Supplemental Questionnaire as to Residual Functional Capacity ("Questionnaire") dated October 26, 2004, and signed by an unidentified therapist[6] and Adrian Webb, M.D. ("Dr. Webb"). The Questionnaire indicates that Plaintiff's ability to relate to other people, to respond appropriately to supervision, and to respond appropriately to co-workers was impaired and that the degree of impairment was "moderately severe." (R. at 350) The Questionnaire further indicates that the earliest date that this level of severity has existed is October of 2004. (R. at 351)

The ALJ found that the Questionnaire was "couched in broad, general terms that are not translated into a vocationally relevant, function by function assessment." (R. at 22) Thus, the ALJ concluded that it was "impossible to determine from the Questionnaire what specific impact mental impairments have on the claimant's ability to function and what the claimant is capable of doing, despite these mental impairments." (Id.)

---

[6] The therapist's signature appears to be "Law[rence] Dunn." (R. at 351)

Plaintiff argues that the Questionnaire uses the exact language of the Commissioner's own regulations and rulings. See Plaintiff's Mem. at 8 (citing 20 C.F.R. §§ 404.1545,[7] 416.945, 404.1519n,[8] and SSR 85-15[9]). Plaintiff also asserts that as a matter of common sense, the Questionnaire is not "couched in broad and general terms" and is in fact a function by function assessment. See id. While the Court agrees that, in the

---

[7] 20 C.F.R. §§ 404.1545(c) and 416.945(c) each state:

> (c) Mental abilities. When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c) (2007).

[8] 20 C.F.R. § 404.1519n(c) provides that reports of consultative examinations should include, "in cases of mental impairment(s), the opinion of the medical source about your ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers and work pressures in a work setting." 20 C.F.R. § 404.1519n(c) (2007).

[9] Social Security Regulation ("SSR") 85-15 provides in relevant part that:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15, 1985 WL 56857, at *4 (S.S.A.).

circumstances of this case, the reason given by the ALJ for giving little weight to the Questionnaire was not valid,[10] the Court finds the error to be harmless.

Plaintiff sought disability benefits for a closed period which the ALJ correctly determined to be from May 20, 2004, through May 31, 2005. (R. at 24) The Questionnaire clearly reflects that the limitations only began in October of 2004, five months following the alleged onset of disability. (R. at 351) Thus, the Questionnaire completed by Dr. Webb and the therapist does not support a finding that Plaintiff was disabled because the disability did not last for a twelve month period. See 42 U.S.C. § 423(d)(1)(A)(a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."). In fact, at the hearing Plaintiff's counsel explained the decision to amend Plaintiff's application to request a closed period of disability, (R. at 405-06), by stating that "we couldn't sustain our burden after June of '05," (R. at 407), and opining that there had been medical improvement after that date, (id.). The possibility of such improvement was specifically recognized by Dr. Webb and the therapist when they indicated on the Questionnaire that it "was unclear at this time," (R. at 351), whether the limitations could be expected to last for 12 months or longer, (id.).

Furthermore, there is an abundance of other evidence in the

---

[10] In other circumstances, however, the ALJ's reasoning may not be error. See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991)(stating that reports which contain "little more than brief conclusory statements or the mere checking of boxes denoting the level of residual functional capacity ... are entitled to relatively little weight.").

record which indicates that Plaintiff's impairments were not expected to last twelve months. Edwin Davidson, M.D., a Disability Determination Services ("DDS") physician, made this specific finding on August 27, 2004, (R. at 141), opining that Plaintiff "should be functional by 5/05," (R. at 153). Another DDS consultant, Marsha Tracy, M.D., made identical findings on November 23, 2004.[11] (R. at 318, 332) On February 18, 2005, Plaintiff saw Preeti Rout, M.D., at Rhode Island Hospital for a follow-up visit relative to Plaintiff's hepatitis. (R. at 352) Plaintiff reported to Dr. Rout that he was followed at the Providence Center for his depression, that it was under good control, and that he had "no active issues ...." (R. at 353)

Finally, Plaintiff's own statements cast considerable doubt on his implicit contention that the impairments identified by Dr. Webb and the therapist in the Questionnaire prevented him from working during the twelve month period of alleged disability.[12] On November 2, 2004, Plaintiff's therapist wrote in a progress note that Plaintiff "states that he [would] 'much rather work' & plans to call his SSI lawyer & cancel his case. [Plaintiff] reports he has been able to maintain a job despite being Bipolar II [diagnosis]; he states he lost jobs due to his substance abuse problems." (R. at 316) Plaintiff told his therapist on November 9, 2004, that "his father does not want him to obtain a full time job because [Plaintiff] help[s] him since he is elderly." (R. at

---

[11] Dr. Tracy wrote in part: "Hospitalized many times for detox, never mental impairment. He is improving slowly, but still has problems with anger management which makes him 'more than not severe.' However, w/ continued abstinence should be not severe by 5/20/04." (R. at 332) It is clear from Dr. Tracy's entire report that this date is an inadvertent error and that she intended to write "5/20/05."

[12] Plaintiff testified at the hearing that he was unable to work during the closed period of disability because the medication he was taking made him extremely tired, (R. at 406), and that it was hard for him to get along with people at work, (R. at 407).

315) On November 26, 2004, Plaintiff reported that "he goes to a temp agency daily & sometimes is able to work 1-2 days a week." (R. at 339) On December 21, 2004, Plaintiff told his therapist that he had "only attended one AA/DA last week meeting bec[ause] he worked 4 days ...." (R. at 344) At the hearing, Plaintiff testified that in 2005 he believed that he started working in February and that he worked at that job for two months. (R. at 408)

Thus, the Court rejects Plaintiff's contention that the opinions of Dr. Webb and the therapist (as reflected in the Questionnaire) should have been given controlling weight.[13] As explained above, their opinions regarding the level of Plaintiff's mental impairment were inconsistent with the other evidence in the record. Cf. SSR 96-2p ("Even if a treating source's medical opinion is well supported, controlling weight may not be given to the opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record.").

In short, although the ALJ's reason for giving "little weight," (R. at 22), to the Questionnaire was erroneous, such error was harmless. Cf. Perez Torres v. Sec'y of Health & Human Servs., 890 F.2d 1251, 1255 (1st Cir. 1989)("Although the ALJ misread the record in stating the claimant never alleged a mental condition ... we have examined the entire record and find the error harmless). The Questionnaire itself reflects that the level of impairment upon which Plaintiff relies to establish his disability did not exist prior to October of 2004 and that there

[13] The Court notes that the therapist's opinion, standing alone, would not be entitled to controlling weight, because a therapist is not an "acceptable medical source," 20 C.F.R. § 404.1513(a) (2007) (listing acceptable medical sources), but is considered an "other source," id. § 404.1513(d)(including therapists in list of such "other sources").

is no evidence that it continued beyond May of 2005. Since Plaintiff's closed period of disability was correctly determined by the ALJ to end as of May 31, 2005, the Questionnaire does not support a finding that Plaintiff was disabled for the requisite twelve month period.

**Conclusion**

The ALJ's determination that Plaintiff was not disabled is supported by substantial evidence in the record, and any legal error is harmless. Accordingly, I order that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
March 31, 2008